[No. D017969. Fourth Dist., Div. One. Mar. 14, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL GOMEZ, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III, V and VI.

24

## COUNSEL

Stefanie A. Sada, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Keith I. Motley and Pamela A. Ratner, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TODD, J.**—A jury found Michael Gomez guilty of robbery with personal use of a firearm (Pen. Code,[1] §§ 211, 12022.5, subd. (a)) and being a felon in possession of a firearm (§ 12021, subd. (a)). In a bifurcated proceeding the trial court found true allegations that Gomez was twice previously convicted of serious felonies (§§ 667, subd. (a)/1192.7, subd. (c)(18) and (c)(27); 667, subd. (a)/1192.7, subd. (c)(18)) and once served a prison term (§ 667.5, subd. (b)). The court sentenced Gomez to prison for a total of twenty years consisting of an upper five-year term for the robbery, a consecutive four-year term for the personal use of a firearm, a consecutive one-year term for the prison term enhancement and 2 five-year terms for the serious prior felony convictions. Pursuant to section 654 the court stayed an upper three-year term for the felon in possession of a firearm conviction.

On appeal, Gomez contends (1) the trial court abused its discretion in denying his motion to sever the felon in possession of a firearm charge from the armed robbery charge, (2) the prosecution did not meet its burden of demonstrating due diligence to secure the presence at trial of witness Fausto Prudencio and it was not harmless beyond a reasonable doubt to have permitted the prosecutor to introduce Prudencio's preliminary hearing testimony, (3) the case must be remanded for resentencing because the court erroneously relied on the gun use and prior convictions to both aggravate and enhance his sentence, (4) the five-year enhancement for his 1983 conviction of attempted second degree burglary was error because it is legally impossible for a burglary committed after January 1, 1983, to be residential, and thus a serious felony, and (5) the trial court did not exercise its discretion to order his serious felony enhancements to be served concurrently. Finding no merit in the contentions, we affirm.

### FACTS

About 4:55 p.m. on Saturday, May 16, 1992, 17-year-old Martha Alvarez and her coworker, Alma Olivares, were preparing to close La Popular Tortilleria, a food shop, on National Boulevard in San Diego. Gomez drove to the shop alone and entered wearing a blue bandanna below his eyes and dark sunglasses. Gomez pointed a gun at Alvarez's chest and told her to open the door (which was some kind of a cart) blocking passage to the back. Alvarez did not comply, instead running upstairs and hiding in a bathroom. Alvarez had seen Gomez in the store two separate times before, and she knew his name. The following Monday Alvarez told a coworker that Gomez was the robber.

---

[1] All statutory references are to the Penal Code unless otherwise specified.

While Alvarez was upstairs Gomez pointed the gun, a black revolver, at Olivares and ordered her to open the register. Olivares complied and watched as Gomez took all of the money, about $200, and left. A neighboring witness who heard Alvarez say the store had been robbed wrote down the license plate number of the getaway car.

Three days later, on May 19, 1992, the car used in the robbery and known to be the car Gomez drove was spotted with him sitting in the driver's seat. San Diego Police Department Detective John F. Lusardi arrested Gomez. Before the arrest, when Miguel Santiago was riding in the car, Gomez noted the police were behind the car and asked Santiago if he was scared. Gomez also mentioned something about the robbery. In a later search of Gomez's residence, Lusardi recovered a blue bandanna and black baseball hats similar to those worn by the robber. A firearm was not recovered in the case.

The day before Gomez was arrested he went to Santiago's home and showed him a black revolver about four inches long with a light colored handle. Gomez wanted to sell the gun to Santiago for $160.

## DISCUSSION

## I

Gomez contends the trial court abused its discretion when it denied his motion to sever the charge of possession of a firearm by a felon from the armed robbery charge. The contention is without merit.

After the trial court denied Gomez's severance motion he admitted he was a convicted felon so that under *People* v. *Valentine* (1986) 42 Cal.3d 170 [228 Cal.Rptr. 25, 720 P.2d 913] the jury would hear only the fact of his felony conviction, and not the nature of that conviction. (*Id.* at pp. 182-183.) Near the conclusion of the prosecution's case-in-chief, counsel stipulated Gomez had been previously convicted of a felony within the meaning of section 12021.

Relying on *Walker* v. *Superior Court* (1974) 37 Cal.App.3d 938, 942 [112 Cal.Rptr. 767], involving a similar combination of charges, he argues that allowing the jury to hear he was previously convicted of a felony was unduly prejudicial to its consideration of the robbery charge. He points out that he did not take the stand and the prior felony allegations were bifurcated, so the jury would not have known about any prior crimes except for the charge and instructions on section 12021. Further, he notes the court did not instruct the jury under CALJIC No. 2.50 to consider the prior felony solely to determine

the section 12021 charge and not as evidence of bad character or a propensity for criminal activity.

Gomez does not dispute that some of the evidence about the two charges was cross-admissible and he acknowledges the firearm possession was based on the use of a gun during the robbery. Thus, there is no issue concerning whether the charges were properly joined under section 954 or 954.1. Only the proper exercise of the trial court's discretion is at issue. In this connection, *People* v. *Valentine, supra*, 42 Cal.3d at page 180, footnote 3, states in part: "When the joinder statute (§ 954) would otherwise permit consolidation of charges, a trial court should, if requested, carefully exercise its discretion whether to try an ex-felon count separately 'in the interests of justice.' Insofar as the particular facts are known pretrial, the court must balance the legitimate benefits, judicial and prosecutorial, of a consolidated trial against the likelihood that disclosure of ex-felon status in a joint trial will affect the jury's verdict on charges to which that status is irrelevant. Of course, severance is not necessary if the priors on which the ex-felon count is based would be cross-admissible on the remaining charges."

■   Applicable rules of review in such a situation are set forth in *People* v. *Ruiz* (1988) 44 Cal.3d 589, 605 [244 Cal.Rptr. 200, 749 P.2d 854], as follows: " '[D]efendant can establish an abuse of discretion only "on clear showing of prejudice." [Citation.] [¶] . . . The burden of demonstrating that consolidation or denial of severance was a prejudicial abuse of discretion is upon him who asserts it; prejudice must be proved, and "[a] bald assertion of prejudice is not enough." [Citation.]' (*People* v. *Balderas* (1985) 41 Cal.3d 144, 171 [222 Cal.Rptr. 184, 711 P.2d 480]. [Citations.]"

In determining the question of prejudice, evaluation is made in light of the showings made and facts known at the time the motion for severance is made. (*People* v. *Balderas* (1985) 41 Cal.3d 144, 171 [222 Cal.Rptr. 184, 711 P.2d 480].)   ■   In addition, it is the rule that: " 'The determination of prejudice is necessarily dependent on the particular circumstances of each individual case, but certain criteria have emerged to provide guidance in ruling upon and reviewing a motion to sever trial.' (*Frank* v. *Superior Court* (1989) 48 Cal.3d 632, 639 [257 Cal.Rptr. 550, 770 P.2d 1119].) Refusal to sever may be an abuse of discretion where: (1) evidence on the crimes to be jointly tried would not be cross-admissible in separate trials; (2) certain of the charges are unusually likely to inflame the jury against the defendant; (3) a 'weak' case has been joined with a 'strong' case, or with another 'weak' case, so that the 'spillover' effect of aggregate evidence on several charges might well alter the outcome of some or all of the charges; and (4) any one of the charges carries the death penalty or joinder of them turns it into a

capital case. (*Ibid.*; see also *Williams* v. *Superior Court* (1984) 36 Cal.3d 441, 453 [204 Cal.Rptr. 700, 683 P.2d 699].)" (*People* v. *Sandoval* (1992) 4 Cal.4th 155, 172-173 [14 Cal.Rptr.2d 342, 841 P.2d 862].)

The prosecution's theory in this case was that gun use during the robbery was a common element with the gun possession by an ex-felon. Gomez claimed that the charges constituted "a bad faith joinder of the two charges by the prosecution," "an attempt by the prosecution to back door knowledge [of his ex-felon] status" in a situation where "the two counts rise and fall together" depending on the proof of identification of Gomez as the person in the shop at the time in question. Gomez claimed to have been forced, in effect, under *People* v. *Valentine, supra,* 42 Cal.3d 170, to admit he is an ex-felon because of the section 12021 charge. He repeatedly labeled the situation resulting in the jury learning his ex-felon status as "highly prejudicial."

In ruling on the motion, the trial court noted the strong legislative policy in favor of joinder of charges unless there is prejudice, the gun is a common element in all the charges, the crimes were of the same class, and there is no showing of prejudice over and above what would occur in any case where the prosecution makes all the charges relevant to the situation.

In light of the cross-admissibility of the evidence about whether a gun was used and by whom in the robbery charge, the personal gun-use enhancement and the charge of ex-felon in possession of a gun, there is no abuse of discretion shown in the trial court's ruling. "[C]ross-admissibility ordinarily dispels any inference of prejudice . . . ." (*People* v. *Mason* (1991) 52 Cal.3d 909, 934 [277 Cal.Rptr. 166, 802 P.2d 950].) The point Gomez now makes about his not having taken the stand does not aid his argument since the situation at the time of the ruling is what is to be considered. There is no indication the matter of his testimony was suggested to the court. A finding of a clear abuse of discretion cannot be supported by the factor that Gomez ultimately did not testify.

Gomez relies on the 1974 case of *Walker* v. *Superior Court, supra,* 37 Cal.App.3d 938, which involved the same combination of charges, armed robbery and ex-felon firearm possession, as in his case. The evidence of the firearm-possession charge involved the arrest of the defendant 106 days after the robbery to which he was connected by fingerprints on an envelope at the robbed bank and with respect to which the only evidence of weapons was the three robbers had "pistols and one rifle." (*Id.* at pp. 940-941.) *Walker* held, "[W]here two dissimilar offenses occur a significant period of time apart, are connected only by an otherwise unidentified weapon, and proof of one

charge involves potentially prejudicial and otherwise inadmissible evidence on the second charge, the refusal to grant a motion to sever the charges is an abuse of discretion." (*Id.* at p. 943.) *Walker* acknowledged that joinder is generally proper where a specific weapon is common to more than one crime. (*Id.* at p. 942.)

*Walker* is distinguishable from Gomez's case not only because it involved offenses occurring a significant period of time apart, but also because, unlike that case, all of the evidence here points to a specific weapon, a black revolver, simultaneously used to complete both crimes. We observe, too, there have been significant changes in the law on the subject since the decision in *Walker.* Section 954.1, adopted in 1990 with the enactment of Proposition 115, specifically allows joint trials of crimes or offenses of the same class where there is no cross-admissibility of the evidence. A strong public policy preference for joint trials is thus evident. We point out, too, that just as random, violent crime is endemic in today's society (see *Ann M.* v. *Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 678 [25 Cal.Rptr.2d 137, 863 P.2d 207]), so also is there a significant portion of that crime attributable to ex-felons using firearms. In light of the strong public policy favoring joint trials and the apparently significant incidence of gun-use crime by ex-felons, there is no convincing reason to burden the courts with separate trials of charges that are related by the same evidence for reasons of possible prejudice to the defendant. *Walker* does not aid Gomez.

Otherwise, we do not believe the presence of the ex-felon in possession of a gun charge is "unusually likely to inflame the jury against the defendant" (*People* v. *Sandoval, supra,* 4 Cal.4th 155, 172) or that there is such a weakness in one of the cases that a spillover effect from one charge to the other may result. (*Ibid.*; see also *People* v. *Price* (1991) 1 Cal.4th 324, 389 [3 Cal.Rptr.2d 106, 821 P.2d 610]; *Frank* v. *Superior Court* (1989) 48 Cal.3d 632, 641 [257 Cal.Rptr. 550, 770 P.2d 1119].) Whether there was a gun possessed and whether Gomez was the person with the gun were equal issues in both cases. The fact of his ex-felon status would not be determinative of either issue as a result of any inflammatory nature of that information or any carryover effect on the evidence in the robbery charge.

We conclude Gomez has not shown an abuse of discretion, much less a clear abuse, in the trial court's denial of the severance motion.

## II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 22.

## IV

■ Gomez contends the trial court erroneously imposed a five-year sentence enhancement under section 667, subdivision (a), for his 1983 conviction of attempted second degree burglary in case No. CR 63064, because it is legally impossible for a second degree burglary committed after January 1, 1983, to be residential and thus a "serious felony" for which the additional punishment may be imposed. While there is a certain logic to Gomez's contention in this regard, it does not pay appropriate attention to the language of sections 667, subdivision (a), and 1192.7, subdivision (c)(18), adopted by the People June 8, 1982, when read in conjunction with the holding of *People* v. *Guerrero* (1988) 44 Cal.3d 343, 355 [243 Cal.Rptr. 688, 748 P.2d 1150], that "in determining the truth of a prior-conviction allegation, the trier of fact may look to the entire record of the conviction." Thus, Gomez's contention does not aid him.

First, Gomez's theory that a second degree attempted burglary committed after January 1, 1983, cannot be a "serious felony" is based on the change in degrees of burglary effective that date causing all burglaries of inhabited dwellings, whether committed in the daytime or the nighttime,[4] to be first degree burglaries and all others to be second degree. (§ 460, as amended by Stats. 1982, ch. 1297, § 1, p. 4786.) Thus, he concludes that a second degree burglary committed after 1982 cannot legally be a residential burglary; had it been a residential burglary it necessarily would have been first degree.

Under *Guerrero*, the trial court examined the record of Gomez's 1983 attempted-burglary conviction in No. CR 63064 which showed his conviction was a result of a plea bargain after he was charged with attempted burglary of an inhabited dwelling committed April 7, 1983. The reporter's transcript of the preliminary hearing and probation report for the crime showed he had attempted to burglarize a residence. It was on this basis the court made a true finding that Gomez was convicted of a serious felony, an attempted residential burglary, in the 1983 proceeding.

Section 667, subdivision (a), provides in part, ". . . any person convicted of a serious felony who previously has been convicted of a serious felony in this state . . . shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction . . . ." "Serious felony" means a serious felony listed in section 1192.7.

---

[4]Before January 1, 1983, burglaries of inhabited dwellings were only first degree burglaries if committed in the nighttime. (Stats. 1976, ch. 1139, § 206.5, p. 5120.)

(§ 667, subd. (d).) Section 1192.7, subdivision (c)(18) and (27) (Stats. 1989, ch. 1044, § 2.5, p. 3631) define "serious felony" to encompass any attempt to commit "burglary of an inhabited dwelling."

With respect to the originally adopted language of section 1192.7, subdivision (c)(18), referring to "burglary of a residence," *Guerrero* said its rule allowing examination of the entire record of the prior conviction "furthers the evident intent of the people in establishing an enhancement for 'burglary of a residence'—a term that refers to *conduct*, not a specific *crime*." (44 Cal.3d 343, 355, italics in original.) Thus, it is clear the focus of the People in adopting the section was the conduct of the defendant, not the specific criminal conviction.

In order to carry out this purpose with respect to Gomez's 1983 attempted burglary conviction, it is necessary to examine the *conduct* involved in the charge, not the specific crime of which he was convicted, in determining whether he was convicted of a serious felony. There is no question that the conduct shown in the records of the 1983 conviction was an attempted "burglary of a residence," using the section 1192.7 language then in effect, as well as an attempted "burglary of an inhabited dwelling house," under the present language of the section. (See Stats. 1986, ch. 1299, § 11, p. 4607, changing terminology.) The court properly determined from the conduct involved in Gomez's 1983 attempted burglary conviction that it was a serious felony within the meaning of sections 667 and 1192.7, notwithstanding the fact he pled guilty to the specific crime of attempted second degree burglary.

We further note that Gomez's argument about the unfairness of being deprived of the benefit of his 1983 plea bargain by now using it to enhance his sentence is answered by the following passage in *Guerrero*: "The law regularly requires persons to suffer the consequences of their actions, even though they had not or could not foresee those consequences. As pointed out in the dissent in *Alfaro*, 'Of course the admission concerning the residential nature of the burglary was made without the knowledge that it could one day result in an enhanced sentence for later crimes. That is true, however, of every guilty plea to a charge of felony: it is seldom entered in anticipation of the commission of future crimes. Nevertheless if there are subsequent crimes, in most instances there will be enhanced punishment.' (42 Cal.3d at p. 638.)" (*People* v. *Guerrero, supra,* 44 Cal.3d at pp. 355-356.)

V, VI*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

Judgment affirmed.

Kremer, P. J., and Nares, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 16, 1994.

---

*See footnote, *ante,* page 22.