Alonso L. **HERNANDEZ**, aka Alonso Leroy Hernandez, aka Alonso Leeroy Hernandez, Petitioner,

v.

K. **HARRINGTON**,[1] Respondent.

Case No. SACV 07–1096–DMG (RC).

United States District Court,
C.D. California.

June 21, 2010.

**1.** Pursuant to Fed.R.Civ.P. 25(d)(1), K. Harrington is substituted as respondent.

Alonso Leroy Hernandez, Delano, CA, pro se.

Douglas P. Danzig, CAAG Office of Attorney General of California, San Diego, CA, for Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE AND ORDER DENYING CERTIFICATE OF APPEALABILITY

DOLLY M. GEE, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the second amended petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, and has made a *de novo* determination.

IT IS ORDERED that: (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the second amended petition for writ of habeas corpus and dismissing the action with prejudice.

This Court finds an appeal would not be taken in good faith, and petitioner has not made a substantial showing that he has been denied a constitutional right, for the reasons set forth in the Report and Recommendation; thus, a certificate of appealability should not issue under 28 U.S.C. § 2253(c)(2) and Fed. R.App. P. 22(b). *Slack v. McDaniel,* 529 U.S. 473, 483, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *Mayfield v. Calderon,* 229 F.3d 895, 900 (9th Cir.2000).

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on petitioner.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

ROSALYN M. CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Dolly M. Gee, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California.

## BACKGROUND

### I

On September 9, 2004, in Orange County Superior Court case no. 02CF0624, a jury convicted petitioner Alonso L. Hernandez, aka Alonso Leroy Hernandez, aka Alonso Leeroy Hernandez, of one count of discharging a firearm in a school zone in violation of California Penal Code ("P.C.") § 626.9(d) (count 1), one count of discharging a firearm with gross negligence in violation of P.C. § 246.3 (count 2), one count of attempted murder in violation of P.C. § 664/187(a) (count 3), one count of assault with a deadly weapon (firearm) in violation of P.C. § 245(a)(2) (count 4), one count of domestic battery in violation of P.C. § 243(e)(1) (count 5), one count of making criminal threats in violation of P.C. § 422 (count 6), and one count of attempting to evade a peace officer while driving recklessly in violation of California Vehicle Code ("Veh. C.") § 28002 (count 7); and, as to counts 3, 4 and 6, the jury found it to be true that petitioner personally used a firearm within the meaning of P.C. § 12022.5(a), and as to count 3, the jury also found it to be true that petitioner inflicted great bodily injury within the meaning of P.C. § 12022.7(a) and personally discharged a firearm within the meaning of P.C. § 12022.53. Clerk's Transcript ("CT") 75–78, 220–232, 260–62. On January 7, 2005, petitioner was sentenced to the total term of 30 years in state prison. CT 298–300, 302–4.

The petitioner appealed his convictions and sentence to the California Court of Appeal, CT 304, which in an unpublished opinion filed August 2, 2006, 2006 WL 2147733, "reverse[d] [petitioner's] conviction for making a criminal threat" and "[i]n all other respects, [affirmed] the judgment...." Lodgment no. 1 at 18. On September 5, 2006, petitioner, represented by counsel, filed a petition for review in the California Supreme Court,[1] which de-

---

1. In his petition for review to the California Supreme Court, petitioner raised the claims

that petitioner was "denied his Sixth Amend-

nied review on October 11, 2006. Lodgment nos. 2–3.

## II

The California Court of Appeal, in affirming, in part, petitioner's convictions, made the following factual findings:[2]

*March 4, 2002 Incident.* In February 2002, Alicia Garcia lived with petitioner and their one-year-old daughter at petitioner's sister's house. Garcia and petitioner argued, and later when Garcia was asleep, petitioner hit her on the face and leg, leaving visible bruises. Approximately one week later, Garcia's parents picked up Garcia and her daughter and took them to live at their house. Garcia did not tell petitioner she was leaving.

On March 4, 2002, Garcia and her father were home when the telephone rang, but Garcia did not answer because she thought it was petitioner. Later, petitioner arrived at the house to see his daughter. Garcia's father repeatedly told petitioner that he should stay away from Garcia for a while. Petitioner was upset, and he stood up and walked around. Garcia saw a "bulge" in his waistband and thought he had a gun. Petitioner left, and Garcia told her father petitioner had a gun. Garcia heard what she thought was petitioner kicking the toys on the front lawn.

Samuel Varela, a neighbor, was standing on his front yard with his back to the street when he heard gunshots. Varela turned around and saw a man he later identified as petitioner firing a gun into the air. Garcia and her father heard the gunshots. Petitioner got into his car and drove away.

Later, officers found four Speer nine-millimeter cartridge casings at the scene. Officers found the casings 248 feet from the Garcias' home, and approximately 750 feet from the closest elementary school. Officers also found petitioner's car approximately one block from the Garcias' home. Inside the car were two Speer nine-millimeter cartridges and a nine-millimeter gun registration in petitioner's name. Officers arrested petitioner and swabbed his hands for gunshot residue, which they found on his left hand.

*July 5, 2002 Incident.* In July 2002, petitioner was dating Sonia Gutierrez. On July 4, 2002, petitioner, Gutierrez, and her two sons, 11–year–old Gabriel D., and 13–year–old Carlos D., went to Gutierrez's sister's house. Carlos and Gabriel saw petitioner drinking beer throughout the evening and thought he was intoxicated. While petitioner drove them to Gutierrez's house, petitioner and Gutierrez argued because he was driving erratically.

When they got home, petitioner, Carlos, and Gabriel lit fireworks in the backyard. An officer arrived, told Gutierrez fireworks were illegal in the City of Orange, and confiscated them. After the officer left, Gutierrez went upstairs and told petitioner to get his belongings and get out of her house. Petitioner and Gutierrez continued arguing as they went downstairs. Petitioner pushed Gutierrez and she fell-Gutierrez stood up and hit petitioner. Gutierrez walked outside, and Gabriel tried to call 911, but the telephone did not work. Gabriel went outside, and Gutierrez told him to go inside and tell petitioner to leave. Gabriel went inside the house, saw petitioner changing his clothes, went back

ment right to the effective assistance of counsel by counsel's [a] failure [sic] to acquiescence in the joinder of the March and July incidents and [b] failure to base his objection to the introduction of an uncharged violent act on the irrelevance and prejudice of the act

to the chare [sic] of attempted murder[.]" Lodgment no. 2 at 2.

2. *See* Lodgment no. 1 at 2–7 (footnotes omitted).

outside, and hid behind a truck. Petitioner walked outside holding a gun. Petitioner told Gutierrez "to get off the telephone." Gabriel told petitioner "not to shoot his [mother]."

Earl McCoubrey was standing on top of the apartment complex's garage waiting for a telephone call. McCoubrey carried for protection a "six-inch cold steel recon tanto[ ]" knife in a snapped sheath in the small of his back covered by his sweater. Gutierrez walked towards McCoubrey and "asked [him] to call the police because her boyfriend was not exactly happy." McCoubrey told her he was not going to call the police because he did not know the circumstances, but he would get down, let her use the telephone, and make sure her boyfriend "didn't get her." McCoubrey tossed her the telephone and got off the roof. Gutierrez told him her boyfriend was probably armed. McCoubrey said, "that [was] okay, [he's] not worried, and [he] lifted up [his] sweater on [his] back and showed [her] the knife." Gutierrez called the police.

McCoubrey saw petitioner walking towards him and Gutierrez, and he appeared to have been drinking. "[Petitioner] was holding a red flannel shirt against his right hip." Petitioner and Gutierrez started yelling at each other. Gutierrez told petitioner he was not going to touch her children and asked him why he had not left. Petitioner responded he would have left if she had not been calling the police. "[Petitioner] made a beeline for [Gutierrez][,]" and McCoubrey believed he was threatening her. McCoubrey moved between them with his hands at his sides at approximately a 45 degree angle with his palms facing out towards where he was walking. He did not pull his knife or make any aggressive or threatening gestures. Petitioner pulled out a gun and shot McCoubrey in the stomach. Petitioner walked towards Gutierrez and pointed the gun at her. Gu-

tierrez yelled, " 'The kids are out here.' " Petitioner "pull[ed] the trigger[,]" but the gun did not fire—it just "click[ed][.]" Petitioner ran away yelling that he was going to kill all of them. He got into his car and drove away.

Officer Serena Cryar of the City of Orange Police Department responded to a domestic disturbance call. She saw McCoubrey lying on the ground motionless. He had a large knife snapped in a sheath strapped to his belt. Cryar removed the knife from the sheath and set it aside for her safety.

After a lengthy car chase in which petitioner eventually evaded officers, officers found petitioner's car in the Lemon Heights area of Santa Ana. A few months later, officers recovered a .45 caliber handgun near where officers found the car. A forensic scientist determined the slug removed from McCoubrey and the casing found at the scene were fired from the gun found near petitioner's car.

Later, Nichols interviewed Gabriel at the police department. Gabriel told Nichols he did not see McCoubrey do anything to petitioner. Gabriel also told him he never saw McCoubrey with a knife.

At trial, Gina Figueroa, a neighbor who was sitting in a car nearby, provided a slightly different account of the July 5, 2002 incident. She testified that when petitioner walked towards them, Gutierrez moved back, but McCoubrey did not move at all. She stated there was no physical contact between petitioner and McCoubrey. She also said McCoubrey regularly carries a knife, but she did not see it because he did not pull it out; it was in its sheath the entire time. She saw petitioner shoot McCoubrey.

Gutierrez's 911 call was played for the jury. During the call, Gutierrez stated, "Don't, don't. Don't, don't do it Alonso.

(Gun shot.) (Scream.) Alonso, don't! Don't ... [.] [¶] ... [¶] Alonso don't?"

Petitioner offered the testimony of Gutierrez. Gutierrez testified that at the time of the incident she and petitioner were dating, but she ended the relationship after the incident and had been seeing someone else for a while. She confirmed petitioner was intoxicated, they argued concerning his driving and lighting fireworks, and their argument turned physical. She denied telling Nichols that when petitioner and the boys were lighting fireworks she heard a gunshot.

Gutierrez testified she went outside and asked McCoubrey, whom she did not know and had never seen before, if she could use his telephone. McCoubrey fell off the roof, stood up, and said he was okay. Gutierrez thought he was intoxicated. McCoubrey gave Gutierrez the telephone, and she told him not to get involved. McCoubrey tapped his right side, and Gutierrez saw a large knife in a knife sheath. Gutierrez dialed 911, and petitioner walked outside with his belongings. Petitioner told her to "hang up[ ]" the telephone, and Gutierrez responded, " 'no, no.' " Petitioner reached for the telephone, and Gutierrez said, " 'don't,' and 'don't.' " McCoubrey walked towards them with a knife in his hand pointed forward. Petitioner shot him. After petitioner ran away, Gutierrez knelt beside McCoubrey. She saw the knife, picked it up, and handed it to McCoubrey.

In rebuttal, the district attorney recalled Nichols who had interviewed Gutierrez shortly after the incident. Gutierrez told him that she heard a gunshot when petitioner and the boys were lighting fireworks. She acknowledged seeing McCoubrey previously. She never told him McCoubrey was intoxicated. Gutierrez explained that when she saw petitioner, he pointed the gun at them and told her to get off the telephone. Gutierrez told him she never saw the knife and she never picked it up. Gutierrez was afraid he might shoot her, but she never heard the gun "click." She saw the knife on the ground after the paramedics took McCoubrey.

### III

On September 18, 2007, petitioner filed his initial habeas corpus petition under 28 U.S.C. § 2254 raising the following five claims:[3] (1) "Ineffective Assistance of Counsel [in that petitioner] was denied his [S]ixth [A]mendment rights to the effective assistance of counsel by trial counsel's [a] acquiescence to the joinder of the March [4, 2002] and July [5, 2002] incidents and [b] failure to base his objection to the introduction of an uncharged violent act on the irrelevance and prejudice of the act to the charge of attempted murder"; (2) "Federal and State constitution[al] rights to due process and a fair trial were denied [in that petitioner's] conviction [is] premised on insufficient evidence that he committed the crime of uttering a criminal threat"; (3) "[t]he Prosecution's case for a criminal threat is insufficient on two of the three requisite elements"; (4) "[t]here was no evidence that [the victim] was reason-

---

**3.** On the face of the initial petition, petitioner stated he did not raise Grounds Three, Four and Five before the California Supreme Court "[b]ecause appeal [sic] attorney didn't ... raise them...." Petition at 7. However, since the California Court of Appeal reversed petitioner's conviction for making a criminal threat, Grounds Two through Four, which challenged only that count, are moot. *See*

*Sibron v. State of New York*, 392 U.S. 40, 57, 88 S.Ct. 1889, 1900, 20 L.Ed.2d 917 (1968) (A habeas petition challenging a conviction becomes "moot [when] it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction."); *Chacon v. Wood*, 36 F.3d 1459, 1463 (9th Cir.1994) (same).

ably in sustained fear for her own safety or her immediate family's safety"; and (5) "[t]he outcome of [petitioner's] trial would have been different had counsel's performance not been so deficient." On September 21, 2007, this Court found sua sponte the initial habeas corpus petition to be a "mixed" petition, and offered petitioner the opportunity to strike or dismiss the unexhausted claims and to proceed only on the exhausted claims, as required by *Jefferson v. Budge,* 419 F.3d 1013, 1015 (9th Cir. 2005). On November 19, 2007, petitioner filed a request to amend the petition by striking Grounds Three, Four and Five and to proceed only on Grounds One and Two, and the Court granted that request and then served the amended petition on respondent.

On April 3, 2008, respondent filed a motion to dismiss the amended petition, arguing it remained a "mixed" petition in that petitioner has not exhausted Ground Two. The petitioner did not file an opposition to respondent's motion to dismiss, and on June 10, 2008, this Court found the amended petition was a "mixed" petition, and offered petitioner the opportunity to further amend the amended petition by striking or deleting Ground Two and requesting to proceed only on the exhausted claim, Ground One, as required by *Jefferson,* 419 F.3d at 1015. On August 27, 2008, petitioner requested to strike or dismiss Ground Two and to proceed only on Ground One, and the Court granted that request. On October 22, 2008, petitioner filed an answer to the pending second amended petition, and on November 28, 2008, petitioner filed his reply or traverse.

The pending second amended petition contains only Ground One, which states:

Ineffective Assistance of Counsel [in that petitioner] was denied his [S]ixth [A]mendment rights to the effective assistance of counsel by trial counsel's [a] acquiescence to the joinder of the March [4, 2002] and July [5, 2002] incidents and [b] failure to base his objection to the introduction of an uncharged violent act on the irrelevance and prejudice of the act to the charge of attempted murder.

Petition at 5.

## DISCUSSION

### IV

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "circumscribes a federal habeas court's review of a state court decision." *Lockyer v. Andrade,* 538 U.S. 63, 70, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Wiggins v. Smith,* 539 U.S. 510, 520, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003). As amended by AEDPA, 28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, under AEDPA, a federal court shall presume a state court's determination of factual issues is correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

■ The California Supreme Court reached the merits of petitioner's claims when it denied his petition for review without comment or citation to authority. *Ga-*

ston v. Palmer, 417 F.3d 1030, 1038 (9th Cir.2005), amended by, 447 F.3d 1165 (9th Cir.2006), cert. denied, 549 U.S. 1134, 127 S.Ct. 979, 166 L.Ed.2d 742 (2007); Hunter v. Aispuro, 982 F.2d 344, 348 (9th Cir. 1992), cert. denied, 510 U.S. 887, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991); Medley v. Runnels, 506 F.3d 857, 862 (9th Cir.2007) (en banc), cert. denied, 552 U.S. 1316, 128 S.Ct. 1878, 170 L.Ed.2d 754 (2008). Thus, in addressing Ground One (a) and (b), this Court will consider the reasoned decision of the California Court of Appeal denying those claims on the merits. Ali v. Hickman, 584 F.3d 1174, 1181 n. 5 (9th Cir.2009); Holley v. Yarborough, 568 F.3d 1091, 1098 (9th Cir.2009).

## V

To succeed on an ineffective assistance of trial counsel claim, a habeas petitioner must demonstrate his attorney's performance was deficient and the deficient performance prejudiced the defense. Rompilla v. Beard, 545 U.S. 374, 380, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005); Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The petitioner bears the burden of establishing both components. Williams v. Taylor, 529 U.S. 362, 390–91, 120 S.Ct. 1495, 1511–12, 146 L.Ed.2d 389 (2000); Smith v. Robbins, 528 U.S. 259, 285–86, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000). "Deficient performance is performance which is objectively unreasonable under prevailing professional norms." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir.1990) (citing Strickland, 466 U.S. at 688, 104 S.Ct. at 2064). Prejudice "focuses on the question whether counsel's deficient per-

formance renders the results of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993); Williams, 529 U.S. at 393 n. 17, 120 S.Ct. at 1513 n. 17.

To establish deficient performance, the petitioner must show his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Williams, 529 U.S. at 391, 120 S.Ct. at 1511. In reviewing trial counsel's performance, the court will "strongly presume[ ] [that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690, 104 S.Ct. at 2066; Yarborough v. Gentry, 540 U.S. 1, 8, 124 S.Ct. 1, 5, 157 L.Ed.2d 1 (2003). Only if counsel's acts and omissions, examined within the context of all the surrounding circumstances, were outside the "wide range" of professionally competent assistance, will petitioner meet this initial burden. Kimmelman v. Morrison, 477 U.S. 365, 386, 106 S.Ct. 2574, 2588, 91 L.Ed.2d 305 (1986); Strickland, 466 U.S. at 690, 104 S.Ct. at 2068.

If petitioner makes this showing, he must then establish there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Rompilla, 545 U.S. at 390, 125 S.Ct. at 2467. The errors must not merely undermine confidence in the outcome of the trial, but must result in a proceeding that was fundamentally unfair. Williams, 529 U.S. at 393 n. 17, 120 S.Ct. at 1513 n. 17; Lockhart, 506 U.S. at 369, 113 S.Ct. at 842–43. However, the Court need not determine whether counsel's performance was deficient before determining whether

the defendant suffered prejudice as the result of the alleged deficiencies. *See Robbins,* 528 U.S. at 286 n. 14, 120 S.Ct. at 764 n. 14 ("'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.'" (quoting *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069)).

### a. Ground One (a):

■ The petitioner claims defense counsel was ineffective for "acquiescenc[ing in] . . . the joinder of the March [4, 2002] and July [5, 2002] incidents." There is no merit to this claim, as the California Court of Appeal found.

California law provides for the joinder of offenses of the same class, P.C. § 954, and offenses "are of the same class when they all involve assaultive crimes against the person." *People v. Leney,* 213 Cal.App.3d 265, 269, 261 Cal.Rptr. 541 (1989); *People v. Maury,* 30 Cal.4th 342, 395, 133 Cal. Rptr.2d 561, 608–09, 68 P.3d 1 (2003), *cert. denied,* 540 U.S. 1117, 124 S.Ct. 1058, 157 L.Ed.2d 909 (2004). For example, crimes such as kidnapping, assault, rape and murder are of the same class for purposes of joinder. *See,* e.g., *People v. Alvarez,* 14 Cal.4th 155, 188, 58 Cal.Rptr.2d 385, 404, 926 P.2d 365 (1996), *cert. denied,* 522 U.S. 829, 118 S.Ct. 94, 139 L.Ed.2d 50 (1997); *People v. Kemp,* 55 Cal.2d 458, 476–77, 11 Cal.Rptr. 361, 371, 359 P.2d 913 (1961), *cert. denied,* 368 U.S. 932, 82 S.Ct. 359, 7 L.Ed.2d 194 (1961).

■ California has a "strong legislative policy in favor of joinder of charges unless there is prejudice." *People v. Gomez,* 24 Cal.App.4th 22, 28, 29 Cal.Rptr.2d 94 (1994); *People v. Soper,* 45 Cal.4th 759, 771–72, 89 Cal.Rptr.3d 188, 199–200, 200 P.3d 816 (2009). Thus, "the burden is on the party seeking severance to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately charged." *Soper,* 45 Cal.4th at 773, 89 Cal.Rptr.3d at 201, 200 P.3d 816. In determining whether to grant a motion to sever joined offenses, the trial court should consider: (1) the cross-admissibility of the evidence in separate trials; (2) whether some of the charges are likely to unusually inflame the jury against the defendant; (3) whether a weak case has been joined with a strong case or another weak case so the total evidence may alter the outcome of some or all of the charges; and (4) whether one of the charges is a capital offense, or the joinder of the charges converts the matter into a capital case. *Alcala v. Superior Court,* 43 Cal.4th 1205, 1220–21, 78 Cal.Rptr.3d 272, 287, 185 P.3d 708 (2008).

Here, the California Court of Appeal found the March 2002 and July 2002 incidents were the same class of crimes against the person, and were properly joined under P.C. § 954, holding:

> [P.C.] Section 954 states, "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated. [T]he court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately." [¶] An accusatory pleading may charge two or more different offenses of the same class of crimes or offenses. (*People v. Maury* (2003) 30 Cal.4th 342, 392 [133 Cal. Rptr.2d 561, 68 P.3d 1] (*Maury*).) Two or more offenses of the same class may be tried together, even "where there is

no cross-admissibility of the evidence." (*People v. Gomez* (1994) 24 Cal.App.4th 22, 29 [29 Cal.Rptr.2d 94] (*Gomez* ).) [¶] When the statutory requirements for joinder are met, the trial court may still order severance of the offenses upon a clear showing of prejudice. "The factors to be considered are these: (1) the cross-admissibility of the evidence in separate trials; (2) whether some of the charges are likely to unusually inflame the jury against the defendant; (3) whether a weak case has been joined with a strong case or another weak case so that the total evidence may alter the outcome of some or all of the charges; and (4) whether one of the charges is a capital offense, or the joinder of the charges converts the matter into a capital case. [Citation.]" (*People v. Mendoza* (2000) 24 Cal.4th 130, 160–161 [99 Cal.Rptr.2d 485, 6 P.3d 150].) [¶] At trial, the district attorney moved to consolidate the July 2002 offenses with the March 2002 offenses. When the trial court asked defense counsel if he objected, he responded, "As was discussed between [the district attorney] and [defense counsel] informally in June, there is no objection." [¶] To prevail on his claim his defense counsel's performance was deficient, [petitioner] must demonstrate either that the [P.C.] section 954's statutory elements for joinder were not satisfied or a clear showing of prejudice. (*Maury, supra,* 30 Cal.4th at p. 392 [133 Cal.Rptr.2d 561, 68 P.3d 1].) We conclude [petitioner] has not demonstrated either. [¶] As to the statutory elements of joinder, the March 2002 offense of discharging a firearm with gross negligence ( [P.C.] § 246.3) is "of the same class of crimes or offenses" as the July 2002 offenses of attempted murder ( [P.C.] §§ 664, subd. (a), 187, subd. (a)), assault with a firearm ( [P.C.] § 245, subd. (a)(2)), and domestic battery ( [P.C.] § 243, subd. (e)(1)). All are as-

saultive crimes against a person. (*People v. Walker* (1988) 47 Cal.3d 605, 622 [253 Cal.Rptr. 863, 765 P.2d 70].) And all the offenses involved one defendant, [petitioner]. Therefore, the statutory elements for joinder were satisfied.

Lodgment no. 1 at 12–13. Further, the Court of Appeal found petitioner was not prejudiced by joinder of the March and July 2002 offenses, stating:

> With respect to whether [petitioner] was prejudiced by joinder of the offenses, we conclude he was not. Although the evidence presented at trial was not cross-admissible, that fact is not dispositive. (*Gomez, supra,* 24 Cal.App.4th at p. 29 [29 Cal.Rptr.2d 94].) And none of the offenses were more inflammatory than the others. The March 2002 offenses included discharging a firearm in a school zone and discharging a firearm with gross negligence, and the July 2002 offenses included attempted murder, assault with a firearm, and domestic battery. The offenses arising from both incidents were equally serious. And, a weak case was not joined with a strong case.[¶] As to the March 2002 incident, Garcia testified that when [petitioner] was at her father's house she saw a "bulge" in his waistband and thought he had a gun. Varela, an independent eyewitness, testified he saw [petitioner] firing a gun into the air. The evidence established [petitioner] fired the gun near a school. This was more than sufficient evidence to convict [petitioner] of discharging a firearm in a school zone and discharging a firearm with gross negligence. **Indeed, [petitioner] does not challenge the sufficiency of the evidence on either conviction.** [¶] With respect to the July 2002 incident, there is no dispute [petitioner] hit Gutierrez, [petitioner] shot McCoubrey, and [petitioner] led law enforcement officers on a high-speed chase. The only

issue is whether [petitioner] shot McCoubrey in self-defense. The evidence was overwhelming [petitioner] did not act in self-defense. McCoubrey testified he did not pull his knife or make any aggressive or threatening gestures towards [petitioner]. Nichols testified that when he interviewed Gabriel after the incident, Gabriel told him McCoubrey did not pull out his knife. Figueroa testified McCoubrey's knife was in its sheath the entire time. Cryar testified that when she responded to the scene, McCoubrey had a large knife snapped in a sheath strapped to his belt, and she removed the knife from the sheath and set it aside. Although Gutierrez testified she saw McCoubrey walk towards [petitioner] with a knife, that was in direct conflict with her statements to Nichols immediately after the incident that she never saw McCoubrey with the knife. **Again, [petitioner] does not challenge the sufficiency of the evidence on any of his convictions other than the criminal threats count.** [¶] Lastly, none of the offenses were capital offenses. Based on these circumstances, [petitioner] did not suffer any prejudice as a result of joining the March 2002 and July 2002 offenses. [¶] Relying on *Walker v. Superior Court* (1974) 37 Cal.App.3d 938 [112 Cal.Rptr. 767], [petitioner] contends joinder was inappropriate because the incidents were separated by four months and none of the parties were common to both incidents other than [petitioner]. In *Walker*, the court stated, "[W]here two dissimilar offenses occur a significant period of time apart, are connected only by an otherwise unidentified weapon, and proof of one charge involves potentially prejudicial and otherwise inadmissible evidence on the second charge, the refusal to grant a motion to sever the charges is an abuse of discre-

tion." (*Id.* at p. 943 [112 Cal.Rptr. 767].)

Here, four months did separate the two incidents, but as we explain above, the March 2002 incident and the July 2002 incident involved the same defendant, included offenses of the same class, involved no inherent prejudice, and the evidence establishing guilt of those offenses was overwhelming. [¶] In any event, had [petitioner's] defense counsel objected to joinder of the March 2002 and July 2002 offenses, there is no reasonable probability the result would have been different. As we explain above, the March 2002 and July 2002 incidents included offenses that are of the same class and [petitioner] was not prejudiced by their joinder. [¶] ... [¶] Additionally, [petitioner's] contention [that] the trial court should have exercised its discretion to sever the charges is without merit. As we explain above, severance is appropriate upon a clear showing of prejudice, and [petitioner] failed to establish he was prejudiced by joinder of the March 2002 and July 2002 offenses. [¶] Finally, to support his prejudice argument, [petitioner] relies on a prospective juror's comments during voir dire that because there were seven counts it suggested Hernandez was guilty. That juror was dismissed, and the evidence was overwhelming as to six of the seven counts.

Lodgment no. 1 at 13–15 (emphasis added).

For the reasons stated by the California Court of Appeal, defense counsel was not deficient in failing to make a motion to sever the July and March 2002 incidents since it is highly unlikely that a motion for severance would have been granted, *see Rupe v. Wood*, 93 F.3d 1434, 1444–45 (9th Cir.1996) ("[T]he failure to take a futile action can never be deficient perform-

ance."), *cert. denied,* 519 U.S. 1142, 117 S.Ct. 1017, 136 L.Ed.2d 894 (1997); *Lowry v. Lewis,* 21 F.3d 344, 346 (9th Cir.) (counsel is not obligated to raise frivolous motions, and failure to do so cannot constitute ineffective assistance of counsel), *cert. denied,* 513 U.S. 1001, 115 S.Ct. 513, 130 L.Ed.2d 420 (1994), and, as important, petitioner cannot show that actual prejudice resulted from defense counsel's failure to move to sever the March and July 2002 charges. *See United States v. Rodriguez–Ramirez,* 777 F.2d 454, 458 (9th Cir.1985) (no ineffective assistance of counsel when defendant failed to show severance motion "could have been granted" and he "suffered prejudice as a result of the unsevered trial"). Thus, defense counsel was not ineffective, and the California Supreme Court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

### b. Ground One (b):

██ The petitioner also claims defense counsel was ineffective for "fail[ing] to ... object[ ] to the introduction of an uncharged violent act on the irrelevance and prejudice of the act to the charge of attempted murder." Petition at 5. Once again, there is no merit to this claim, as the California Court of Appeal found.

California Evidence Code § 1101(b)[4] permits evidence of other uncharged acts to be admitted to show a defendant's intent, among other things. *See, e.g., Soper,* 45 Cal.4th at 778, 89 Cal.Rptr.3d at 205, 200 P.3d 816 (A fact finder properly may consider admissible "other crimes" evidence to prove intent, so long as the evidence is sufficient to sustain a finding that the defendant committed both sets of crimes and " 'the factual similarities among the charges tend to demonstrate that in each instance the perpetrator harbored' the requisite intent." (citing *Alcala,* 43 Cal.4th at 1224 & fn. 14, 78 Cal.Rptr.3d at 290 & fn. 14, 185 P.3d 708)); *People v. Ewoldt,* 7 Cal.4th 380, 402, 27 Cal.Rptr.2d 646, 659, 867 P.2d 757 (1994) ("The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent.... In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant 'probably harbor[ed] the same intent in each instance.' " (citations omitted)).

Here, petitioner's uncharged conduct with Garcia in February 2002 was very similar to the charged offenses in July 2002, and such conduct showed petitioner did not act in self-defense, as he claimed, but instead petitioner had the intent to shoot and harm McCoubrey. As the California Court of Appeal found:

> Although [petitioner] acknowledges his defense counsel objected to admission of the February 2002 uncharged battery on Garcia pursuant to Evidence Code section 352, he claims his defense counsel was ineffective for failing to object to its admission specifically as to the attempted murder count. [Petitioner] states, "Whatever relevance it had to the alleged domestic violence against ... Gutierrez was trivial in light of the irrelevance and extraordinarily undue

---

4. California Evidence Code § 1101(b) provides:

   Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act.

   Cal. Evid. C. § 1101(b).

prejudice it had to the charge of attempted murder of ... McCoubrey." [¶] We conclude [petitioner's] defense counsel was not deficient in failing to object to evidence of the February 2002 uncharged battery as to the attempted murder count. There is little likelihood the trial court would have excluded the evidence. In light of [petitioner's] claim of self-defense, evidence of the February 2002 uncharged battery was relevant and admissible on the issue of intent. (See *People v. Ewoldt* (1994) 7 Cal.4th 380, 401–402 [27 Cal.Rptr.2d 646, 867 P.2d 757].)[¶] Additionally, even had the trial court excluded evidence of the February 2002 uncharged battery, it was not reasonably probable the jury would have acquitted [petitioner] of attempted murder ... [since] there was overwhelming evidence [petitioner] shot McCoubrey without provocation.

Lodgment no. 1 at 16.

Since any objection to evidence of the Garcia incident would have been overruled, *Ewoldt,* 7 Cal.4th at 402, 27 Cal.Rptr.2d at 659, 867 P.2d 757, defense counsel was not deficient for failing to object to this evidence. *Matylinsky v. Budge,* 577 F.3d 1083, 1094 (9th Cir.2009), *cert. denied,* — U.S. ——, 130 S.Ct. 1154, — L.Ed.2d —— (2010); *Rupe,* 93 F.3d at 1444–45. Thus, defense counsel was not ineffective, and the California Supreme Court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

## RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) directing that Judgment be entered denying the second amended petition and dismissing the action with prejudice.