Filed 9/2/15  P. v. Vasquez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# **COPY**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FELICIA CLAUDINE VASQUEZ,<br><br>    Defendant and Appellant. | C071762<br><br>(Super. Ct. No. 11F07102) |

While sitting in a parked car at a convenience store, defendant Felicia Claudine Vasquez and codefendant Eric Chiprez watched as a companion, codefendant Ronald Pereira, waited outside the store's front door and struck an unsuspecting shopper, Broderick Crethers, as he left the store.  As the two men fought, defendant pointed a gun at Crethers from the car and Chiprez got out and hit him.  Pereira eventually took Crethers's money and other personal property while defendant continued pointing the gun at him.  Crethers backed away with his hands up, and defendant, Pereira, and Chiprez

drove away together.  Defendant was apprehended the next day at a nearby restaurant with a loaded gun hidden in her waistband under her shirt.  She was with Pereira.

Defendant, Pereira, and Chiprez were tried jointly.  A jury convicted defendant of second degree robbery for the events at the convenience store, but found an attached personal use of a firearm enhancement not true.  (Pen. Code, §§ 211, 12022.53, subd. (b) (count 1); unless otherwise stated, statutory references that follow are to the Penal Code.)  The jury also convicted defendant of unlawfully carrying a concealed loaded firearm and unlawfully carrying a loaded firearm in a public place stemming from her arrest at the restaurant.  (Former § 12025, subd. (b)(6), now § 25400, subd. (c) (count 3); former § 12031, subd. (a)(2)(F), now § 25850, subd. (a) (count 4).)

We note that former section 12025, subdivision (b) has been renumbered section 25400, subdivision (c) without substantive change.  (See Stats. 2010, ch. 711, § 6.)  Former section 12031, subdivision (a) has been renumbered section 25850, subdivision (a).  (See Stats. 2010, ch. 711, § 6.)

On appeal, defendant argues the court erred in denying her motion to sever the robbery count from the unlawful firearms counts, and that insufficient evidence shows defendant aided and abetted the robbery.  She also contends the court failed to instruct on the lesser included offense of grand theft, and that her counsel was ineffective for failing to request an "after-formed-intent" instruction.  She further claims the court gave a supplemental robbery instruction that allegedly misstated the offense's required mental state, and that the abstract of judgment erroneously states her sentence.  Finding no prejudicial error, we affirm.

FACTS AND PROCEEDINGS

*The Robbery*

On October 10, 2011, Crethers was accosted by Pereira while leaving a convenience store in Sacramento.  As Crethers walked out of the store, Pereira, who was

2

standing just outside the door, tried to hit him. Crethers put up his hands in a defensive position and Pereira continued to rush towards him while swinging his fists. Crethers punched Pereira in the face, knocking him to the ground. Pereira stood and dragged Crethers towards a parked car where both men fell to the ground. During the struggle, defendant was seated in the front passenger seat of a nearby two-door car, and Chiprez was seated in the driver's seat.

Crethers was eventually able to climb on top of Pereira. Pereira yelled for someone to get Crethers off of him. Chiprez got out of the car, hit Crethers in the head, and pulled him off Pereira. Chiprez stood by the car and watched while Pereira began kicking Crethers. Pereira eventually pulled off Crethers's sweatshirt, which held his keys, cell phone, iPod, and wallet. Pereira yelled at defendant, "Bitch, you got a clear shot, shoot him."

Pereira stopped beating Crethers only after the store clerk threatened to call police. Crethers noticed defendant sitting in the front passenger seat of the car pointing a three-to-four inch handgun at him. As defendant pointed the gun at Crethers, Pereira told her, "I should have slapped you, bitch, why you didn't shoot him, bitch? Bitch, why you didn't shoot him, bitch? Bitch, you had a clear shot, bitch, why you didn't shoot him?" Upon seeing the gun, Crethers put up his hands and backed away towards the store. Defendant pointed the gun at Crethers while Pereira gathered Crethers's things. Defendant held the seat forward for Pereira to get into the car and Chiprez drove away.

Sacramento County Sheriff's Deputy Lopez was called to the place of the robbery. He interviewed Crethers and reviewed the store's video surveillance, which showed a man standing next to the door immediately take a swing at Crethers as he left the store. It also showed the car the suspects used to escape. The remainder of the video was consistent with Crethers's testimony.

Crethers said he did not know Pereira or Chiprez, but he did know defendant. He met her about one month before at the apartment complex where they both lived and had

3

some contact with her through a mutual friend. Crethers later identified a photograph of defendant as the woman in the car with the gun.

*Defendant's Arrest*

The next day, October 11, Deputy Lopez saw the car driven by Chiprez. After stopping Chiprez, Deputy Lopez summoned Crethers to the place where he had stopped Chiprez's car. Crethers identified Chiprez as one of his assailants on October 10. Chiprez admitted he remembered Crethers and said he knew he "fucked up."

A short time later, Deputy Lopez learned defendant and Pereira were at a nearby restaurant. Deputy Lopez drove to the restaurant in a marked patrol car. He saw defendant sitting in a wheelchair and Pereira standing nearby. When Pereira saw the patrol car, he ran away carrying a bag. While other deputies chased Pereira, Deputy Lopez detained defendant. He asked her where her gun was. She motioned toward her waist, and the officer lifted her shirt and took a loaded .22 caliber pistol from her waistband.

Crethers arrived at the restaurant and identified defendant as the person in the car with the gun. He identified the gun found in defendant's possession as being consistent with the gun she pointed at him during the robbery.

Pereira was eventually apprehended following a foot chase over several blocks. Before being caught, Pereira tried to carjack a woman. When she refused his commands to get out of the car, defendant tried but failed to open the bag he was carrying, which contained a loaded gun and ammunition. Following his arrest, Crethers identified Pereira as the person who robbed him the previous day.

*Trial Court Proceedings*

The Sacramento County District Attorney filed a six-count information in December 2011 against defendant, Pereira and Chiprez, covering the events on October 10 and 11. All three were charged with robbery on October 10. (§ 211 (count 1).) The

4

information alleged defendant personally used a firearm during the robbery.  (§ 12022.53, subd. (b).)  For the events of October 11, defendant was charged with unlawful possession of a loaded concealed firearm (former §12025, subd. (b)(6), now § 25400, subd. (c) (count 3)), and unlawfully carrying a loaded firearm in a public place (former § 12031, subd. (a)(2)(F), now § 25850, subd. (a) (count 4)).

Prior to trial, defendant moved to sever the robbery count from the unlawful gun possession counts, arguing that trying them together would be unduly prejudicial.  The trial court denied the motion.

The prosecution called Crethers and Deputy Lopez, among others, who testified to the events described above.  The defense called defendant's neighbor who testified that she had seen Crethers and defendant socializing in the apartment complex on occasion.  Once, when defendant was going out on a date, Crethers commented that she was "looking good today."

The jury informed the court during deliberations that it had reached verdicts on the unlawful firearm counts against defendant as well as on other counts specifically relating to Pereira, but that it was unable to reach verdicts for any of the defendants on the robbery charge.  The court took the verdicts on the counts on which the jury agreed, and ordered the jury to continue deliberating on the robbery count.

After further deliberations, the jury was still unable to reach a verdict on the robbery count.  The court told the jury it would give additional instructions or available resources to assist in deliberations.  The foreperson replied:  "The five different criteria[] of robbery is what we really deliberated on."  The court asked if the jury could form "a question to help me clarify the law of robbery in such a way that it might help illuminate the requirements, sometimes, for one or more of the jurors?"  After the court directed the jury to submit a written request, the jury submitted the following:

"1.)  A more clear definition for 'force and fear,' as referenced in number 4 of 1600, including, if possible, the time limit on when fear is a factor to consider.  Please

5

also clarify what it means to use force and fear. Please also clarify as full[y] as possible: (if the defendant did not form this required intent until after using the force or fear, then he or she did not commit [the] robbery.)

"2.) How far apart (time) does the deprivation of property have to be from the use of force or fear?

"3.) We are still unclear on whether we can decide on a verdict for potential aider[s] and abettors if we cannot decide on a verdict for the potential perpetrator."

The court responded to the jury's question with the following supplemental instruction:

"Ladies and Gentlemen, in this response I will attempt to restate and further clarify the law on the topics that you have raised. Please keep in mind the instructions that I have given you regarding the law as well as the instruction I have given you in my prior response. Many of your questions may be answered by a closer reading of those instructions.

"Questions One and Two--I've just reread those questions--you've asked for clarification regarding the terms force and fear. Court's response: There is no formal legal definition of the term force and fear. You should rely on the common, ordinary meaning of those terms. The element of fear means that the victim was afraid of injury to himself.

"You have also asked about a time limit on which fear is a factor to consider. And that's in quote, time limit on which fear is a factor to consider. It is--the Court's response: It is for you to decide whether the evidence has established that the victim was in fear, and if so, the time period for which that occurred. It is for you to decide whether the evidence has established that force or fear was used, and if so, the time period in which that occurred. In order to prove the crime of robbery, each of the following elements must be proved: One, a person had possession of property of some value, however slight; two, the property was taken from that person or immediate presence;

6

three, the property was taken against the will of that person; four, the taking or carrying away was accomplished either by force or fear to gain possession of the property; five, the property was taken with the specific intent permanently to deprive that person of the property.

"To be guilty of robbery as a perpetrator, the defendant must have formed the required specific intent either before the use of force or fear, or during the time such force or fear was being used. To be guilty of robbery as an aider and abettor, the defendant must have formed the intent to aid and abet the commission of the robbery before or while a perpetrator carried away the property to a place of temporary safety."

In response to the jury's third question, the court stated: "You may consider the guilt six [*sic*] of each defendant as a perpetrator or an aider and abettor. In order for someone--in order to find someone guilty as an aider and abettor, it is necessary that one or more persons are guilty as a perpetrator of the crime. You may not find a person guilty as an aider and abettor unless you have found that there was at least one perpetrator of the crime of robbery."

There was no objection to the instruction as given. The attorneys were allowed to present further closing argument following the supplemental instruction after which the jury resumed deliberating. Later that day, the jury still could not reach a verdict on the robbery count. The court instructed the jury to consider each defendant's guilt separately. Following further deliberation, the jury asked: "Do all five criteria have to be met on each defendant in the 'People must prove that' for the Penal Code Section 211, or can one or two criteria be [met]? The same goes for Aiding and Abetting (401)." The court answered that all five criteria had to be met for each defendant.

The next day, the jury returned guilty verdicts on the robbery count for defendant and Pereira, but deadlocked on Chiprez's guilt and on defendant's gun use allegation. The court declared a mistrial on the deadlocked issues.

7

In May 2012, the court sentenced defendant to state prison for the low term of two years for the robbery in count one, plus a consecutive eight months, or one-third the middle term, for unlawfully possessing a concealed loaded firearm in count 3. Although a minute order from the hearing states that under section 654 the court stayed the sentence on count 4 for unlawfully carrying a loaded firearm in a public place, the reporter's transcript does not reflect that the court actually orally imposed a sentence for count 4 during the May hearing.

In July, the parties stipulated that defendant would be resentenced to the upper term of five years for the robbery in exchange for the prosecution dismissing the gun enhancement as well as a misdemeanor firearm charge pending in a separate case. The court then resentenced defendant according to the parties' stipulation to five years for the robbery, a concurrent 16 months on the unlawful possession of a concealed loaded firearm, and stayed a 16-month concurrent sentence for unlawfully carrying a loaded firearm in a public place. The People moved to dismiss the gun enhancement and the pending misdemeanor matter, and the court granted the motions.

DISCUSSION

I

*Motion to Sever*

Defendant first contends the court should have severed the robbery count from the unlawful firearm possession counts, trying those counts separately. According to defendant, the court erroneously denied her severance motion because the proof of each incident was not cross-admissible, the robbery case was weaker than the firearm possession charges, and joining them together caused a prejudicial "spillover" effect, which rendered the trial fundamentally unfair and violated her constitutional rights.

Section 954 partly provides: "An accusatory pleading may charge two or more different offenses connected together in their commission . . . or two or more different

8

offenses of the same class of crimes or offenses, under separate counts . . . ." (§ 954.) Whenever such offenses are joined together, however, the court, "in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately." (*Ibid.*)

For purposes of section 954, the phrase "connected together in their commission" is broadly construed. (*Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1218 (*Alcala*).) The requirement may be satisfied even though " '*the offenses charged "do not relate to the same transaction and were committed at different times and places . . . against different victims."* ' " (*Ibid.*) Under such circumstances, joinder is proper " ' "*if there is a common element of substantial importance in their commission . . .*" ' " (*Ibid.*)

Defendant concedes the requirements for joinder were satisfied in this case, as all of the offenses involved the possession of a firearm. Defendant, then, can predicate error in denying severance "only on a clear showing of potential prejudice." (*People v. Kraft* (2000) 23 Cal.4th 978, 1030 (*Kraft*).) We review the trial court's ruling for abuse of discretion, which we will find only if the ruling falls outside the bounds of reason. (*Ibid.*; *People v. Osband* (1996) 13 Cal.4th 622, 666.) "[I]n assessing whether the trial court abused its discretion in denying severance, we examine the state of the record at the time of the ruling." (*Kraft, supra*, at p. 1032.)

" 'The determination of prejudice is necessarily dependent on the particular circumstances of each individual case, but certain criteria have emerged to provide guidance in ruling upon and reviewing a motion to sever trial.' [Citation.] Refusal to sever may be an abuse of discretion where: (1) evidence on the crimes to be jointly tried would not be cross-admissible in separate trials; (2) certain of the charges are unusually likely to inflame the jury against the defendant; (3) a 'weak' case has been joined with a 'strong' case, or with another 'weak' case, so that the 'spillover' effect of aggregate evidence on several charges might well alter the outcome of some or all of the charges;

9

and (4) any one of the charges carries the death penalty or joinder of them turns the matter into a capital case." (*People v. Sandoval* (1992) 4 Cal.4th 155, 172-173.) None of the above concerns warranted a severance of the charges here.

First, evidence underlying the gun possession charges would have been admissible in a trial on the robbery. Evidence that defendant possessed a gun while with Pereira on October 11, the day after the robbery, was relevant and admissible to establish she aided and abetted Pereira the day before when he robbed Crethers. (*People v. Cox* (2003) 30 Cal.4th 916, 955-957 [defendant's possession of a weapon that could have been used in the commission of a previous crime is relevant and admissible]; *People v. Gomez* (1994) 24 Cal.App.4th 22, 28 [whether there was a gun possessed and whether the defendant was the person with the gun were equal issues in both a robbery case and a felon in possession charge based on defendant's arrest a few days later]; *People v. Miranda* (2011) 192 Cal.App.4th 398, 407 (*Miranda*) [" ' "[C]ompanionship, and conduct before and after the offense" ' are also relevant to determining whether a defendant aided and abetted a crime"].) Such evidence tended to prove that defendant was the person sitting in the car pointing a gun at Crethers while Pereira robbed him at the convenience store on October 10 as Crethers testified.

Defendant's counsel conceded as much during trial. In discussing applicable jury instructions regarding circumstantial evidence, her attorney argued: "I believe that the circumstantial evidence that is relevant in this case is primarily evidence of Miss Vasquez['s] possession of the gun the day after the alleged robbery. [¶] That would be circumstantial evidence that she possessed the gun on the date of the alleged robbery and that it can be considered powerful corroborating evidence as to the claims of Mr. Crethers . . . ."

Normally, cross-admissibility of evidence alone is sufficient to dispel any prejudice and justify a trial court's refusal to sever the charged offenses. (*Alcala, supra,* 43 Cal.4th at p. 1221.) That evidence underlying the robbery may not have been

10

admissible in a separate trial on the firearm possession charges is of no moment. "[C]omplete (or so-called two-way) cross-admissibility is not required. In other words, it may be sufficient, for example, if evidence underlying charge 'B' is admissible in the trial of charge 'A'--even though evidence underlying charge 'A' may not be similarly admissible in the trial of charge 'B.' " (*Ibid.*) That is precisely the situation here.

But even if we assume the evidence underlying the offenses was not cross-admissible, the trial court did not abuse its discretion in denying defendant's severance motion. (*Alcala, supra,* 43 Cal.4th at p. 1221.) "[T]he absence of cross-admissibility alone would not be sufficient to establish prejudice where (1) the offenses were properly joinable under section 954, and (2) no other factor relevant to the assessment of prejudice demonstrates abuse of discretion." (*People v. Geier* (2007) 41 Cal.4th 555, 577, overruled on other grounds by *Melendez-Diaz v. Massachusetts* (2009) 557 U.S. 305, 174 L.Ed.2d 314.)

Contrary to defendant's characterization, the robbery case was not necessarily weaker than the firearm offenses. Crethers, who personally knew defendant, testified that she pointed a gun at him while Pereira forcefully took his property. As the jury was instructed, the testimony of a single witness can prove any fact. (*People v. Rincon-Pineda* (1975) 14 Cal.3d 864, 885.) Crethers similarly described the incident to Deputy Lopez when he arrived to investigate the robbery. According to the officer, the store's surveillance video corroborated Crethers's description, even if Deputy Lopez could not determine from the tape whether defendant was holding a gun while seated in the car.

Proof of all of the offenses depended on the credibility of the witnesses; Crethers in the robbery case and Deputy Lopez, who confiscated a gun from defendant the next day, for the gun possession charges. Viewing the matter from the point where the trial court was called upon to decide the severance motion, we cannot say the court permitted a stronger case to be tried jointly with a weaker one thereby allowing the stronger case to bolster the latter.

11

And none of the charges were particularly inflammatory.  Defendant did not fire the gun during either incident, nor was anyone seriously injured.

Given the above, we cannot say the trial court abused its discretion in denying defendant's severance motion based on the information available at the time the court ruled.  We therefore reject defendant's severance challenge.

II

*Sufficiency of the Evidence to Support the Robbery Conviction*

Defendant next contends insufficient evidence supports her conviction for aiding and abetting Pereira in robbing Crethers because no evidence shows defendant knew Pereira was going to assault and rob him.  Relying on the jury's deadlocked verdict on the personal firearm use enhancement, defendant argues the evidence shows she was merely present during the robbery but not that she intended to aid and abet Pereira in the offense.  We disagree with defendant's view of the evidence and conclude substantial evidence supports her robbery conviction on an aiding and abetting theory.

When considering a sufficiency of the evidence challenge, we must " ' "review the whole record in the light most favorable to the judgment to determine whether it contains substantial evidence--i.e., evidence that is credible and of solid value--from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." ' " (*People v. Hill* (1998) 17 Cal.4th 800, 848-849 (*Hill*).)  We may not reweigh the evidence or substitute our judgment for that of the trier of fact.  (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206*.*)  "[O]ur opinion that the evidence could reasonably be reconciled with a finding of innocence or a lesser degree of crime does not warrant a reversal of the judgment." (*Hill, supra,* 17 Cal.4th at p. 849.)  Reversal for insufficient evidence is warranted only where it clearly appears that upon no hypothesis whatever is there sufficient evidence to support a conviction.  (*People v. Bolin* (1998) 18 Cal.4th 297, 331 (*Bolin*); *People v. Massie* (2006) 142 Cal.App.4th 365, 371.)

12

" 'A person aids and abets the commission of a crime when he or she, (i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aids, promotes, encourages or instigates the commission of the crime.' " (*People v. Campbell* (1994) 25 Cal.App.4th 402, 409 (*Campbell*).)  Although neither presence at the scene of a crime nor knowledge of, but failure to prevent a crime, is sufficient to establish aiding and abetting its commission, a court may consider presence at the scene, companionship, and conduct before and after the offense when determining whether a defendant is guilty of aiding and abetting the perpetrator.  (*Ibid.*)

Aiding and abetting, moreover, may be committed "on the spur of the moment." (*People v. Eskew* (1962) 206 Cal.App.2d 205, 207.)  A person may aid and abet a criminal offense without having agreed to do so prior to the act.  (*People v. Durham* (1969) 70 Cal.2d 171, 181; *People v. Villa* (1957) 156 Cal.App.2d 128, 134.)  Thus, it is not necessary that the perpetrator expressly communicate his criminal purpose to an abettor since that purpose may be apparent from the circumstances.  (*People v. Butts* (1965) 236 Cal.App.2d 817, 836; *People v. Stadnick* (1962) 207 Cal.App.2d 767, 772 ["It need not be shown that the direct perpetrator of a crime expressly communicated his purpose to the accused in order to make the latter liable as an aider and abettor [citation]"].)

Given these concepts, the record contains substantial evidence supporting defendant's conviction.  Crethers testified that defendant was sitting in the front passenger seat of the getaway car.  From such evidence, a jury reasonably could have inferred that defendant saw Pereira waiting by the front door of the store for Crethers to leave and that she saw him immediately start punching Crethers when he left the store. While this assault was taking place, Crethers testified that defendant pointed a gun at him.  Defendant continued to point the gun at him while Pereira took his property.  Upon seeing the gun, Crethers put his hands up and began backing way.  He ceased struggling

13

with Pereira and did not attempt to retrieve his personal property from Pereira. Based on the evidence, a reasonable jury could have inferred that defendant knew Pereira intended to rob Crethers, that she intended to encourage or facilitate Pereira in robbing him, and that she actually did so by pointing the gun at Crethers during the robbery. (*People v. Contreras* (2013) 58 Cal.4th 123, 160 [testimony of single witness can establish material fact].)

While it is true the jury deadlocked on the personal firearm use enhancement attached to the robbery charge, this does not mean the jury rejected Crethers's uncontradicted testimony that defendant pointed the gun at him during the robbery. It is well settled that inconsistent verdicts are allowed to stand if the verdicts are otherwise supported by substantial evidence. (*Miranda*, *supra*, 192 Cal.App.4th at p. 405.) "The rule applies equally to inconsistent enhancement findings [citation], and to an enhancement finding that is inconsistent with the verdict on a substantive offense." (*Ibid.*)

" 'Sufficiency-of-the-evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt. [Citations.] This review should be independent of the jury's determination that evidence on another count was insufficient.' [Citation.]" (*People v. Lewis* (2001) 25 Cal.4th 610, 656.) "An inconsistency may show no more than jury lenity, compromise, or mistake, none of which undermines the validity of a verdict. [Citations.]" (*Ibid.*)

*People v. Federico* (1981) 127 Cal.App.3d 20 (*Federico*), is instructive. There, the defendant was charged with murder and robbery. Enhancement allegations charged that he was armed with and used a firearm during the commission of the crimes. (*Id.* at p. 24.) The jury convicted the defendant of first degree murder and robbery, but found all of the special enhancement allegations not true. (*Ibid.*) On appeal, the court rejected the defendant's argument that his murder conviction should be reversed because it was

14

fatally inconsistent with the jury's "not true" findings on the allegation that he was armed with a firearm during the commission of the murder, since it was undisputed that the victim died from gunshot wounds. (*Id.* at p. 31.) While acknowledging the inconsistency between the jury's murder verdict and its enhancement finding, the court nevertheless concluded the inconsistent verdicts did not require reversal of his murder conviction. Instead, the court found section 954, regarding the joinder of offenses, resolved the "logical inconsistency between the not true finding of the armed allegation and the guilty verdict on the murder charge . . . ." (*Id.* at pp. 32-33.) That section provides in relevant part, "[a]n acquittal of one or more counts shall not be deemed an acquittal of any other count." (§ 954.)

Like the court in *Federico*, " ' " '[w]e find more persuasive cases recognizing that such inconsistent verdicts may be caused not by the confusion but the mercy of the jury, of which the appellant can neither complain nor gain further advantage.' " ' " (*Federico, supra,* 127 Cal.App.4th at p. 33.) The negative finding on the armed allegation was a determination more favorable to the defendant than the evidence warranted. It does not compel reversal of the robbery conviction. (*Ibid.*)

The evidence, when viewed in the light most favorable to the judgment, reasonably indicates that defendant played an affirmative supportive role in robbing Crethers and was not simply an unwitting bystander to the crime. While Pereira robbed Crethers, defendant sat in the getaway car and pointed a gun directly at him. Her conviction of robbery on an aiding and abetting theory was proper.

III

*Instruction on Theft as a Lesser Included Offense*

Despite her counsel's request at trial that an instruction on theft as a lesser included offense of robbery not be given, defendant now contends the court prejudicially

15

erred by failing to so instruct the jury sua sponte, which necessarily deprived her of her constitutional fair trial rights. (§§ 484, 486, 487, subd. (c).)

In any criminal case, the trial court must instruct on the general principles of law relevant to the issues fairly raised by the evidence. (*People v. Breverman* (1998) 19 Cal.4th 142, 154 (*Breverman*).) That obligation includes instructing on lesser included offenses if evidence is presented that, " 'if accepted by the trier of fact, would absolve the defendant of guilt of the greater offense but not of the lesser.' " (*People v. Rogers* (2006) 39 Cal.4th 826, 866 (*Rogers*).) "The obligation to instruct on lesser included offenses exists even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to its being given." (*Breverman* at p. 154.) The court's sua sponte duty thus "prevents the 'strategy, ignorance, or mistakes' of *either* party from presenting the jury with an 'unwarranted all-or-nothing choice,' encourages 'a verdict . . . no harsher *or more lenient* than the evidence merits' [citation], and thus protects the jury's 'truth-ascertainment function' [citation]." (*Id.* at p. 155.)

The erroneous failure to instruct on a lesser included offense does not mandate a per se reversal, however. (*Breverman, supra,* 19 Cal.4th at p. 165.) Instead, the error is "subject to harmless error review under the standard of *People v. Watson* (1956) 46 Cal.2d 818, [] 836-837." (*Rogers, supra,* 39 Cal.4th at pp. 867-868.) "Reversal is required only if it is reasonably probable the jury would have returned a different verdict absent the error or errors complained of." (*Id.* at p. 868; *Breverman* at p. 165 ["misdirection of the jury is not subject to reversal unless an examination of the entire record establishes a reasonable probability that the error affected the outcome"].)

"Theft is a lesser included offense of robbery, which includes the additional element of force or fear." (*People v. Webster* (1991) 54 Cal.3d 411, 443 (*Webster*).) "If intent to steal arose after the victim was assaulted, the robbery element of stealing by force or fear is absent." (*Ibid.*)

16

In this case, the court acknowledged its sua sponte duty to instruct on lesser included offenses, but found that there was not substantial evidence to warrant giving any such instructions. Counsel for all three defendants agreed and none requested any lesser include offense instructions.

During closing arguments, however, Pereira's counsel argued that he did not possess the intent to steal Crethers's property until after any force or fear was used. In light of Pereira's closing argument, the court questioned whether a lesser included offense instruction was required. The court offered to give a petty theft instruction, even though it did not believe the argument was particularly compelling. Counsel for defendant and Chiprez's counsel both stated that they did not want the court to give the lesser included offense instruction. Pereira's counsel was not against giving the instruction, however. The court ultimately instructed the jury on the lesser included offense of petty theft, but only as to Pereira. The jury found both Pereira and defendant guilty of the greater offense of robbery.

We need not decide whether the trial court initially erred in concluding substantial evidence did not support giving a theft instruction as a lesser included offense of robbery, or whether it erred in later giving a petty theft instruction for Pereira only. Even assuming the court erred in not giving a theft instruction as to defendant, we conclude she cannot show prejudice from the purported error. In other words, it does not appear reasonably probable the jury would have found defendant guilty of grand theft had it been instructed on the offense as to her.

The jury was instructed multiple times that to be guilty of robbery, the intent to take the property must have been formed before or during the time force or fear was used. If the intent to take another's property was not formed until after using the force or fear, the jury was told it could not convict the defendants of robbery.

During closing arguments, the prosecutor and counsel for all three defendants also emphasized that the intent to take Crethers's property had to be formed before or during

17

the application of force or fear.  For example, Chiprez's attorney argued:  "I just want to emphasize this last paragraph [of the robbery instruction] that says the defendant's intent to take the property must have been formed during, before or during the time he used the force or fear.  [¶]  Probably the key to the whole robbery case is in this last sentence.  If the defendant did not form this required intent until after using the force, he did not commit a robbery."

The jury necessarily found this element true beyond a reasonable doubt because it convicted defendant of robbery.  It cannot be presumed that even assuming substantial evidence supported giving the lesser included offense instruction that such evidence must have been strong enough to affect the outcome had the instruction not been omitted.  (*Breverman, supra,* 19 Cal.4th at p. 177.)  Indeed, the jury expressly rejected the theory that Pereira was guilty of the lesser included theft offense.  Considering the totality of the record before us, it is not reasonably likely the jury would have accepted the theory for defendant, who Crethers testified pointed a gun at him while his property was taken.

IV

*"After-Formed" Intent Pinpoint Instruction*

In a related vein, defendant argues her counsel was ineffective for not requesting a pinpoint instruction on "after-formed" intent.  According to defendant, the theory that the intent to steal was not formed until after the force or fear was applied should have been highlighted for the jury via a pinpoint instruction.  While defendant acknowledges the court had no sua sponte duty to instruct on after-formed intent (*Webster*, *supra*, 54 Cal.3d at p. 443, she nevertheless argues her counsel had no tactical reason for not requesting such a pinpoint instruction since "[a]n accused is entitled *on request* to nonargumentative instructions that 'pinpoint' the theory of the defense."  (*Ibid.*)

To resolve defendant's ineffective assistance claim, however, we need not decide whether her counsel's performance was deficient.  If "it is easier to dispose of an

18

ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." (*Strickland v. Washington* (1984) 466 U.S. 668, 697 [80 L.Ed.2d 674].) Finding it is not reasonably probable that, but for the alleged error, the result would have been different (*People v. Ledesma* (1987) 43 Cal.3d 171, 216-218), the absence of a pinpoint instruction on after-formed intent does not undermine our confidence in the outcome. (*Bolin*, *supra*, 18 Cal.4th at p. 333.)

Where standard instructions fully and adequately advise the jury upon a particular issue, a pinpoint instruction on that point is properly refused. (*People v. Canizalez* (2011) 197 Cal.App.4th 832, 857 (*Canizalez*).) A pinpoint instruction telling the jury that an individual could not be guilty of robbery if he formed the intent to steal after using force or fear would have been duplicative of the standard robbery instruction given by the court. (*People v. Earp* (1999) 20 Cal.4th 826, 901-902 [trial court need not give duplicative instructions]; *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 99 [a trial court need not give a pinpoint instruction if it merely duplicates other instructions].)

The court instructed the jury with CALCRIM No. 1600, which made clear that robbery required the jury to find an accused had the intent to take property by force or fear. That instruction expressly provides: "The defendant's intent to take the property must have been formed before or during the time he or she used force or fear. If the defendant did not form this required intent until after using the force or fear, then he or she did not commit robbery." A pinpoint instruction on after-formed intent, then, would have been unnecessary because the standard robbery instruction adequately informed the jury of this point. (*Canizalez, supra,* 197 Cal.App.4th at p. 857.) Because the trial court could have properly refused to give the pinpoint instruction, defendant cannot show she was prejudiced by her counsel's failure to make such a request.

And, as discussed above, the prosecutor and all defense counsel highlighted the after-formed intent issue for the jury, especially Chiprez's counsel who specifically emphasized: "Probably the key to the whole robbery case is in this last sentence. If the

19

defendant did not form this required intent until after using the force, he did not commit a robbery." The jury was thus adequately informed about the after-formed intent issue.

V

*Supplemental Jury Instruction on Robbery*

Defendant contends the trial court's supplemental instructions regarding the mental element for robbery constituted reversible error. We disagree and find the supplemental instruction properly instructed the jury on the mental state required to support a robbery conviction.

The People's request that we take judicial notice of our unpublished opinion in *People v. Pereira* (Case No. C071385) is denied.

"On review, we examine the jury instructions as a whole, in light of the trial record, to determine whether it is reasonably likely the jury understood the challenged instruction in a way that undermined the presumption of innocence or tended to relieve the prosecution of the burden to prove defendant's guilt beyond a reasonable doubt. [Citation.]" (*People v. Paysinger* (2009) 174 Cal.App.4th 26, 30.) "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record. [Citation.]" (*Estelle v. McGuire* (1991) 502 U.S. 62, 72 [116 L.Ed.2d 385, 399].)

Defendant's contention focuses on one sentence of the four-paragraph instruction: "to be guilty of robbery as a perpetrator, the defendant must have formed the required specific intent either before the use of force or fear, or during the time such force or fear was being used." One element of robbery is the intent to permanently deprive the owner of the property. (*People v. Marshall* (1997) 15 Cal.4th 1, 34.) "[T]he evidence must show that the requisite intent to steal arose either before or during the commission of the act of force. [Citation.]" (*Ibid.*) Defendant asserts that since the sentence in question omitted the term "to take property," the instruction did not tell the jury anything about the

20

required relationship between the taking of property and fear and force. Noting the jury's confusion on the elements of robbery, defendant claims the supplemental instruction increased the jury's confusion by suggesting that a specific intent to use force or fear was sufficient to establish the crime of robbery. Given the jury's difficulty with the robbery count and the fact that defendant took the property after she finished assaulting Crethers, defendant concludes that she was necessarily prejudiced by the alleged error.

Defendant's claim improperly isolates one sentence of the supplemental instruction from its context. As recounted above, the sentence defendant attacks was preceded by this sentence, describing the mental element of robbery: "the property was taken with the specific intent permanently to deprive that person of the property." It is clear that the term "required specific intent" in the allegedly erroneous sentence was referring to the prior sentence's "specific intent permanently to deprive that person of the property." The fact that these two sentences contain the only references in the instruction to the term "required specific intent" reinforces our conclusion.

Read as a whole, the supplemental instruction informed the jury that the intent to steal must be formed before or during the use of force or fear. This correctly stated the law.

VI

*Abstract of Judgment*

Defendant finally contends the abstract of judgment misstates the terms of her actual sentence and should be modified to reflect the court's oral pronouncement of judgment. Defendant, however, cites an outdated abstract of judgment filed June 16, 2012, rather than the April 23, 2013, abstract of judgment entered nunc pro tunc to July 5, 2012. Because the court entered a new abstract of judgment following defendant's resentencing, any alleged defects in the prior abstract of judgment, which no longer governs, are irrelevant.

21

The abstract of judgment entered nunc pro tunc correctly states defendant's aggregate sentence as five years, which coincides with the court's oral pronouncement of judgment at the resentencing hearing. Defendant is also mistaken that the sentence on count 3 should have been eight months, or one-third the middle term. The sentence on the count 3 gun possession charge was imposed concurrently and not consecutively. Thus, the low term of 16 months, rather than one third the middle term, applied. (§ 1170.1, subd. (a); *People v. Thompson* (2009) 177 Cal.App.4th 1424, 1432, disapproved on other grounds by *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 888 [" 'Because concurrent terms are not part of the principal and subordinate term computation under section 1170.1, subdivision (a), they are imposed at the full base term, not according to the one-third middle term formula. . . .' "].)

DISPOSITION

The judgment is affirmed.


            HULL            , Acting P. J.



We concur:



      DUARTE          , J.



      HOCH            , J.


22